## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**NONANI ENTERTAINMENT, LLC,**
Plaintiff

v.

**LIVE NATION WORLDWIDE, INC.,
TREMANI BARTLETT P/K/A
"POLO G," AND HERBERT
RANDALL WRIGHT P/K/A "G
HERBO"**
Defendants

Case No.

## COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW** the plaintiff NoNaNi Ent., LLC (hereinafter "NoNaNi" or "Plaintiff"), by and through the undersigned counsel and hereby respectfully states, alleges, and requests as follows:

## JURISDICTION AND VENUE

1. The Honorable Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2. The jurisdictional threshold is met as "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

3. Plaintiff is a Florida limited liability company (LLC) comprising of three members.

4. Two of the three Plaintiff members are domiciled in the state of Florida.

5. The third Plaintiff member is domiciled in the state of Maryland.

6. Defendant Live Nation Worldwide, Inc. is a corporation registered in the state of Delaware with its principal place of business in the state of California.

7. Defendant Tremani Bartlett p/k/a Polo G is a natural person who, upon information and belief, is domiciled in the state of California.

8. Defendant Herbert Randall Wright p/k/a G Herbo is a natural person who, upon information and belief, is domiciled in the state of Illinois.

9. The Honorable Court has personal jurisdiction over all Defendants as they each conduct or conducted business in the state of Florida.

10. Venue is proper pursuant to 28 U.S.C. § 1391.

## DEMAND FOR JURY TRIAL

11. Plaintiff invokes its Seventh Amendment right to a jury trial on all issues so triable as the value in controversy exceeds $20.  *See* U.S. Const. amend. VII ("In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved."); *see also* Fed. R. Civ. P. 38.

## THE PARTIES

12. Plaintiff NoNaNi Entertainment, LLC is a well-respected minority-owned Florida limited liability company that specializes in the promotion and coordination of different entertainment activities.  The company was created in 2017.  "NoNaNi" is a play on the CEO Charles Potter's three children's names Noah, Nadia, and Nile. NoNaNi frequently makes donations to the preschool R Club and the BLI learning lab.

13. Defendant Live Nation Worldwide, Inc. (hereinafter "Live Nation") is a large, well-known worldwide live entertainment company that promotes and coordinates music concerts.

14. Defendant Tremani Bartlett p/k/a Polo G (hereinafter "Polo G") is a well-known rap artist who is otherwise *sui juris*.

15. Defendant Herbert Randall Wright p/k/a G Herbo (hereinafter "G Herbo") is a well-known rap artist who is otherwise *sui juris*.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

### A. Plaintiff's Contract with Defendant Polo G

16. On April 29, 2021, Plaintiff paid Defendant Polo G $45,000 to secure a July 17, 2021, performance at a Cuban Club in Central Florida.

17. Due to unforeseen circumstances, the event had to be postponed.

18. This led Plaintiff and Defendant Polo G to enter a contract for a different concert performance on November 27, 2021, at the Hoopz + Hip Hop Festival ("Festival"). Exhibits 1 (Defendant Polo G contract).

19. In addition to his obligation to perform at the Festival, Defendant Polo G was contractually required to promote the event in the following manner: (a) providing a video drop within 48 hours of receiving the deposit, (b) posting on Facebook and Instagram promoting the event flyer within 48 hours of receipt of the flyer, (c) posting at least one story on Instagram and Facebook with the event flyer within 1 month of the show, (d) posting the event flyer on Instagram and Facebook 7 days

prior to the event, and (e) the posts (excluding stories) shall remain on his page through the date of the event.  *Id.* at p. 1, ¶ 9.

20. It is a necessary and normal business practice for artists to be required to aid in the promotion of their own concerts.

21. Pursuant to the contract, on top of the prior $45,000 deposit, Defendant Polo G was also paid $60,000 to secure the concert performance date.  *Id.* at p. 1-2, ¶ 10.

22. In addition, Plaintiff paid $84,000 for the venue, $10,000 for the soundstage and lighting, $19,500 for the hosts, and $68,000 for advertising and promotion.

23. A portion of the amount used to pay the for the venue was refunded, but that same amount had to be used to pay for the advertising.

24. Moreover, Plaintiff was to also pay Defendant Polo G $85,000 just prior to the event and cover various other expenses to make the performances possible.  *Id.* at p. 1-2, at ¶¶ 10-11.

**B.  Plaintiff's Contract with Defendant G Herbo**

25. On April 29, 2021, Plaintiff paid Defendant G Herbo $27,500 to secure a July 17, 2021, performance at a Cuban Club in Central Florida.

26. Due to unforeseen circumstances, the event had to be postponed.

27. This led Plaintiff and Defendant G Herbo to enter a contract for a different concert performance on November 27, 2021, at the Festival.  Exhibits 2 (Defendant G Herbo contract).

28. In addition to his obligation to perform at the Festival, Defendant G Herbo was contractually required to promote the event in the following manner: (a) providing

a video drop within 48 hours of receiving the deposit, (b) posting on Facebook and Instagram promoting the event flyer within 48 hours of receipt of the flyer, (c) posting at least one story on Instagram and Facebook with the event flyer within 1 month of the show, (d) posting the event flyer on Instagram and Facebook 7 days prior to the event, and (e) the posts (excluding stories) shall remain on his page through the date of the event. *Id.* at p. 1, ¶ 9.

29. It is a necessary and normal business practice for artists to be required to aid in the promotion of their own concerts.

30. Pursuant to the contract, on top of the prior $27,500 deposit, Defendant G Herbo was also paid $15,000 to secure the concert performance date. *Id.* at p. 1-2, ¶ 10.

31. In addition, Plaintiff paid $84,000 for the venue, $10,000 for the soundstage and lighting, $19,500 for the hosts, and $68,000 for advertising and promotion.

32. Moreover, Plaintiff was to also pay Defendant G Herbo $32,500 just prior to the event and cover various other expenses to make the performances possible. *Id.* at p. 1-2, at ¶¶ 10-11.

**C. Defendants' Breaches and Interference**

33. Plaintiff performed on both contracts in good faith by making all required payments, diligently promoting the event, and selling the concert tickets on the Ticket Master platform.

34. Defendant Polo G failed to promote the Festival or his upcoming performance as required by the contract.

35. Defendant G Herbo failed to promote the Festival or his upcoming performance as required by the contract.

36. Defendant Live Nation owns Ticket Master and is aware of the content and posts on the Ticket Master website.

37. Even though Ticket Master began selling tickets for Plaintiff's Tampa event scheduled for November 27, 2021, shortly thereafter, Defendant Live Nation began to promote a different concert event in Tampa with Defendant Polo G only a couple of weeks later in December of 2021.

38. Defendants Live Nation and Polo G were both aware that this December of 2021 concert event scheduled to occur only a couple of weeks after Plaintiff's Festival—in addition to Defendant Polo G's failure to adequately promote Plaintiff's Festival—would negatively affect ticket sales.

39. In October of 2021, Defendant Live Nation cancelled its Tampa event, but began promoting a completely different event with Defendant G Herbo in Atlanta, Georgia to occur on the very same date as Plaintiff's Festival.

40. Defendants Live Nation and G Herbo were both aware that this new Atlanta event directly conflicted with Plaintiff's Tampa event and that this fact—in addition to Defendant G Herbo's failure to adequately promote Plaintiff's Festival—would negatively affect ticket sales.

41. Once Defendant G Herbo was scheduled to perform at the Atlanta event, both Defendants Live Nation and G Herbo knew he would not perform at Plaintiff's event.

42. Making matters worse, Defendant Polo G had an advertisement up on his social media from September to November of 2021 advertising a December 18, 2021, concert date in the Mid Florida Credit Union Amphitheater Florida State Fairgrounds, a venue less than 10 miles away from where the November 27, 2021, Festival was to occur.

43. Defendant Polo G was aware that scheduling a concert in the same place only 3 weeks after Plaintiff's Festival—in addition to his failure to adequately promote Plaintiff's Festival—would negatively affect the sales for Plaintiff's Festival.

44. In good faith, Plaintiff attempted to rectify the situation with all Defendants through their agent Musicians Touring Alliance, but these pleas were ignored.

45. These actions caused understandable confusion in the marketplace and resulted in the sudden standstill of all ticket purchases for Plaintiff's event.

46. Any reasonable consumer would understand that it is, at best, unlikely for an artist to perform on the same night in both Atlanta, Georgia and Tampa, Florida.

47. Additionally, it would be even more unusual when considering that Defendant Polo G was to perform in Tampa, Florida only a few weeks later.

48. These realities were exacerbated when the artists only posted Defendant Live Nation's events on their social media and, contrary to their contractual arrangements, stopped all promotion of Plaintiff's event without explanation.

49. Confronted with this promotional inconsistency, the consumer was forced to cautiously assume that Plaintiff's event was illegitimate.

50. Consumers were essentially forced to believe that one of these events could be fraudulent.

51. Consumers had to essentially choose which of these two events was legitimate to avoid the possibility of having their money stolen by the other.

52. Naturally, due to the legitimate advertisements made by Defendants and the more worldwide recognition of Defendant Live Nation's company, consumers would understandably prefer to purchase tickets for Defendant Live Nation's event.

53. Due to the individual and collective actions of Defendants, Plaintiff was forced to cancel the Tampa event in order to mitigate any further damages.

**D. Damages Experienced**

54. The event was to include concert performances, a celebrity basketball game, and Florida's largest sneaker convention.

55. Defendants' actions caused Plaintiff, who always acted in good faith, significant monetary and reputational damages.

56. Defendants' actions forced Plaintiff to cancel the event in order to minimize further monetary losses.

57. If Plaintiff was to have allowed the Festival to proceed as scheduled without the participation of its main headliners—Defendants Polo G and G Herbo—it would result in sharp consequences to its reputation and require a refund of all ticket sales.

58. If not for Defendants' actions, Plaintiff reasonably expected to receive substantial income by selling several thousand tickets for these activities.

59. If not for Defendants' actions, Plaintiff reasonably expected to receive substantial income in the form of 50% of each sneaker sale from the sneaker convention.

60. If not for Defendants' actions, Plaintiff reasonably expected to receive substantial income generated from the sale of food and beverages by ticket purchasers.

61. If not for Defendants' actions, Plaintiff reasonably expected to receive substantial income from the sale of merchandise signed by the celebrities who would have participated in the celebrity basketball game.

62. If not for Defendants' actions, Plaintiff reasonably expected to be contacted by different investors from across the country for similar events once they could verify how this special event would have succeeded.  This would have resulted in substantial income and investments from and for future events.

63. As a result of Defendants' actions, Plaintiff was forced to forfeit the large deposits paid to Defendants Polo G and G Herbo, in addition to the deposits towards other artists.

64. As a result of Defendants' actions, Plaintiff was forced to forfeit money paid with respect to all the media coverage and promotional material through social media, radio commercial scripts, digital billboard designs, flyers, posters, etc.

65. As a result of Defendants' actions, Plaintiff lost the trust of investors, consumers, and the charity who promoted the concert.

## FIRST CLAIM FOR RELIEF

*Tortious Interference with Defendant Polo G's Contract*

*Against Defendant Live Nation*

66. The allegations in paragraphs 1 to 65 are hereby re-alleged as if fully incorporated herein.

67. There is or was a valid contract between Plaintiff and Defendant Polo G for Defendant Polo G's performance at and promotion of the Festival.

68. There is or was a business relationship between Plaintiff and Defendant Polo G under which Plaintiff has or had legal rights with respect to Defendant Polo G's performance at and promotion of the Festival.

69. Defendant Live Nation knew that Plaintiff had a contract or business relationship with Defendant Polo G with respect to the performance at and the promotion of the Festival.

70. Defendant Live Nation owns Ticket Master and is aware of the content and posts on the Ticket Master website.

71. Defendant Live Nation knew of Plaintiff's event as it was being promoted on the Ticket Master website.

72. Defendant Live Nation intentionally and without justification interfered with the contract and business relationship between Plaintiff and Defendant Polo G.

73. Even though Ticket Master began selling tickets for Plaintiff's Tampa event scheduled for November 27, 2021, shortly thereafter, Defendant Live Nation began to promote a different concert event in Tampa with Defendant Polo G only a couple of weeks later in December of 2021.

74. Defendants Live Nation was aware that the promotion of this December of 2021 concert event scheduled to occur only a couple of weeks after Plaintiff's Festival would negatively affect ticket sales.

75. As a result of Defendant Live Nation's actions, Plaintiff experienced loss of profits and damages to its reputation.

**WHEREFORE,** Plaintiff respectfully requests that the Honorable Court enter a judgment in its favor against Defendant Live Nation for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

## <u>SECOND CLAIM FOR RELIEF</u>

*Tortious Interference with Defendant G Herbo's Contract*
*Against Defendant Live Nation*

76. The allegations in paragraphs 1 to 65 are hereby re-alleged as if fully incorporated herein.

77. There is or was a valid contract between Plaintiff and Defendant G Herbo for Defendant G Herbo's performance at and promotion of the Festival.

78. There is or was a business relationship between Plaintiff and Defendant G Herbo under which Plaintiff has or had legal rights with respect to Defendant G Herbo's performance at and promotion of the Festival.

79. Defendant Live Nation knew that Plaintiff had a contract or business relationship with Defendant G Herbo with respect to the performance at and the promotion of the Festival.

80. Defendant Live Nation owns Ticket Master and is aware of the content and posts on the Ticket Master website.

81. Defendant Live Nation knew of Plaintiff's event as it was being promoted on the Ticket Master website.

82. Defendant Live Nation intentionally and without justification interfered with the contract and business relationship between Plaintiff and Defendant G Herbo.

83. In October of 2021, Defendant Live Nation cancelled its Tampa event, but began promoting a completely different event with Defendant G Herbo in Atlanta, Georgia to occur on the very same date as Plaintiff's Festival.

84. Defendants Live Nation was aware that the promotion of this Atlanta event directly conflicted with Plaintiff's Tampa event and also used one of Plaintiff's Festival headliners—Defendant G Herbo—and that these facts would negatively affect ticket sales.

85. Once Defendant G Herbo agreed to perform at the Atlanta event, Defendant Live Nation knew he would not perform at Plaintiff's event.

86. As a result of Defendant Live Nation's actions, Plaintiff experienced loss of profits and damages to its reputation.

**WHEREFORE,** Plaintiff respectfully requests that the Honorable Court enter a judgment in its favor against Defendant Live Nation for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

## THIRD CLAIM FOR RELIEF

*Breach of Defendant Polo G's Contract*

*Against Defendant Polo G*

87. The allegations in paragraphs 1 to 65 are hereby re-alleged as if fully incorporated herein.

88. Plaintiff and Defendant Polo G entered into a contract for Defendant Polo G's performance at and promotion of the Festival.  Exhibit 1.

89. Plaintiff did all, or substantially all, of the essential things which the contract required it to do.

90. Plaintiff paid Defendant Polo G $45,000 and $60,000 pursuant to the terms of the contract.

91. All conditions required by the contract for Defendant Polo G's performance had occurred.

92. Defendant Polo G failed to do something essential which the contract required him to do.

93. After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant Polo G failed to properly promote the Festival and his performance.  This is an essential element of the contract.

94. After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant Polo G acted in bad faith by promoting his own concert tour, which included a performance less than 10 miles away from the Festival's venue only 3 weeks after the Festival was scheduled.  This is an essential element of the contract.

95. As a result of Defendant Polo G's actions, Plaintiff experienced loss of profits and damages to its reputation.

96. Defendant Polo G was aware that his failure to properly promote Plaintiff's Festival would negatively affect ticket sales.

97. Defendant Polo G was aware that the promotion of another one of his concerts set to occur only 3 weeks after the Festival was scheduled would negatively affect ticket sales.

**WHEREFORE,** Plaintiff respectfully requests that the Honorable Court enter a judgment in its favor against Defendant Polo G for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

## <u>FOURTH CLAIM FOR RELIEF</u>

*Breach of Defendant G Herbo's Contract*
*Against Defendant G Herbo*

98. The allegations in paragraphs 1 to 65 are hereby re-alleged as if fully incorporated herein.

99. Plaintiff and Defendant G Herbo entered into a contract for Defendant G Herbo's performance at and promotion of the Festival.  Exhibit 2.

100.     Plaintiff did all, or substantially all, of the essential things which the contract required it to do.

101.     Plaintiff paid Defendant G Herbo $27,500 and $15,000 pursuant to the terms of the contract.

102.     All conditions required by the contract for Defendant G Herbo's performance had occurred.

103.     Defendant G Herbo failed to do something essential which the contract required him to do.

104.     After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant G Herbo failed to properly promote the Festival and his performance.  This is an essential element of the contract.

105.     After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant G Herbo acted in bad faith by promoting another of his concerts in a different state, but on the same day as Plaintiff's Festival.  This is an essential element of the contract.

106.     Once he agreed to promote and perform at the Atlanta event, Defendant G Herbo knew he would not promote or perform at Plaintiff's Tampa event.

107.     As a result of Defendant G Herbo's actions, Plaintiff experienced loss of profits and damages to its reputation.

108.     Defendant G Herbo was aware that his failure to properly promote Plaintiff's Festival would negatively affect ticket sales.

109.     Defendant G Herbo was aware that the promotion of his performance at the Atlanta event directly conflicted with Plaintiff's Tampa event where he was already scheduled to perform on the same date would negatively affect ticket sales.

**WHEREFORE,** Plaintiff respectfully requests that the Honorable Court enter a judgment in its favor against Defendant G Herbo for compensatory and punitive damages,

costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

## **FIFTH CLAIM FOR RELIEF**

*Unjust Enrichment*

*Against Defendant Polo G*

110.     The allegations in paragraphs 1 to 65 are hereby re-alleged as if fully incorporated herein.

111.     Plaintiff has conferred a benefit on Defendant Polo G.

112.     Defendant Polo G has knowledge and is aware of the benefit Plaintiff conferred on him.

113.     Plaintiff paid Defendant Polo G $45,000 and $60,000 for his performance at and promotion of the Festival.

114.     Defendant Polo G knowingly and voluntarily accepted and retained the benefit Plaintiff conferred.

115.     The circumstances render the Defendant Polo G's retention of the benefit inequitable unless he pays Plaintiff the value of the benefit.

116.     After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant Polo G failed to properly promote the Festival and his performance.

117.     After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant Polo G acted in bad faith by promoting his own concert

tour, which included a performance less than 10 miles away from the Festival's venue only 3 weeks after the Festival was scheduled.

118.     As a result of Defendant Polo G's actions, Plaintiff experienced loss of profits and damages to its reputation.

119.     Defendant Polo G was aware that his failure to properly promote Plaintiff's Festival would negatively affect ticket sales.

120.     Defendant Polo G was aware that the promotion of another one of his concerts set to occur only 3 weeks after the Festival was scheduled would negatively affect ticket sales.

**WHEREFORE,** Plaintiff respectfully requests that the Honorable Court enter a judgment in its favor against Defendant Polo G for compensatory and punitive damages, costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

## SIXTH CLAIM FOR RELIEF

*Unjust Enrichment*

*Against Defendant G Herbo*

121.     The allegations in paragraphs 1 to 65 are hereby re-alleged as if fully incorporated herein.

122.     Plaintiff has conferred a benefit on Defendant G Herbo.

123.     Defendant G Herbo has knowledge and is aware of the benefit Plaintiff conferred on him.

124.    Plaintiff paid Defendant G Herbo $27,500 and $15,000 for his performance at and promotion of the Festival.

125.    Defendant G Herbo knowingly and voluntarily accepted and retained the benefit Plaintiff conferred.

126.    The circumstances render the Defendant G Herbo's retention of the benefit inequitable unless he pays Plaintiff the value of the benefit.

127.    After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant G Herbo failed to promote the Festival and his performance.

128.    After agreeing to promote and perform at the Festival but prior to its cancellation, Defendant G Herbo acted in bad faith by promoting a different concert in a different state, but on the same day as Plaintiff's Festival.

129.    Once he agreed to promote and perform at the Atlanta event, Defendant G Herbo knew he would not promote or perform at Plaintiff's Tampa event.

130.    As a result of Defendant G Herbo's actions, Plaintiff experienced loss of profits and damages to its reputation.

131.    Defendant G Herbo was aware that his failure to properly promote Plaintiff's Festival would negatively affect ticket sales.

132.    Defendant G Herbo was aware that the promotion of his performance at the Atlanta event directly conflicted with Plaintiff's Tampa event where he was already scheduled to perform on the same date would negatively affect ticket sales.

**WHEREFORE,** Plaintiff respectfully requests that the Honorable Court enter a judgment in its favor against Defendant G Herbo for compensatory and punitive damages,

costs, prejudgment interest, and any other relief the court deems equitable and just under the circumstances.

## **PRAYER FOR RELIEF**

**WHEREFORE**, in view of foregoing, Plaintiff respectfully requests and prays for judgement in its favor against Defendants as follows:

A.  Ordering Defendants to pay Plaintiff no less than $300,000 for all compensatory and punitive damages it experienced,

B.  Ordering Defendants to pay all costs and prejudgment interest, and

C.  Ordering any further relief that the Court deems equitable and just under the circumstances.

**RESPECTFULLY SUBMITTED** in Tampa, Florida, on this 10th day of August, 2022.

> **s/ EDWIN PRADO-GALARZA, ESQ.**
> Attorney at Law
> Prado, Núñez & Asociados, P.S.C.
> 513 W. Colonial Dr Unit 5
> Orlando, FL 32804
> (407) 420-7926
> Pradolaw10@gmail.com
> Florida Bar No. 1008115
>
> **DMRA Law LLC**
> 1111 Brickell Ave.
> Suite 1550
> Miami, FL 33131
> Tel. 305-548-8666
>
> *s/ Manuel Franco*
> Manuel Franco
> Florida Bar No. 126443
> Manuel.Franco@DMRALaw.com