# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

NONANI ENTERTAINMENT, LLC,

    Plaintiff,

v.                                        Case No. 8:22-cv-1829-WFJ-JSS

LIVE NATION WORLDWIDE, INC.,
TREMANI BARTLETT P/K/A
"POLO G," AND HERBERT
RANDALL WRIGHT P/K/A
"G HERBO,"

    Defendants.
_____/

## ORDER

Before the Court is Defendant Live Nation Worldwide, Inc.'s ("Live Nation") Motion to Dismiss (Dkt. 17) Plaintiff NoNaNi Entertainment, LLC's ("NoNaNi") Complaint (Dkt. 1). NoNaNi has responded in opposition (Dkt. 22), and Live Nation has not replied. Upon careful consideration, the Court denies Live Nation's Motion to Dismiss with prejudice. The Court instead dismisses Counts I & II of NoNaNi's Complaint without prejudice and grants NoNaNi leave to file an amended complaint.

## BACKGROUND

The Court recounts the facts as alleged by NoNaNi. On April 29, 2021, NoNaNi paid Defendants Tremani Bartlett ("Polo G") and Herbert Randall Wright

("G Herbo") to secure their performance at a Central Florida venue for the night of July 17, 2021. Dkt. 1 at 3–4. For unknown reasons, the event was canceled. *Id.* Consequently, on July 30, 2021, NoNaNi entered into contracts with Polo G and G Herbo for a different performance to be held at the Hoopz + Hip Hop Festival (the "Festival") on November 27, 2021, in Tampa, Florida. *Id.* at 3–4, 6.

The new contracts established a number of promotion obligations for Polo G and G Herbo. These included: "(a) providing a video drop within 48 hours of receiving [NoNaNi's] deposit, (b) posting on Facebook and Instagram [to promote] the event flyer within 48 hours of receipt of the flyer, (c) posting at least one story on Instagram and Facebook with the event flyer within 1 month of the show, [and] (d) posting the event flyer on Instagram and Facebook 7 days prior to the event[.]" *Id.* at 3–5. With the exception of the stories, these posts were to remain on Polo G and G Herbo's social media through November 27, 2021. *Id.*

NoNaNi claims that both Polo G and G Herbo "failed to promote the Festival or [their] upcoming performance[s] as required by the contract[s]." *Id.* at 5–6. They allegedly promoted their own concerts and tours instead. *Id.* at 13–15. And, according to NoNaNi, these acts and omissions "negatively affect[ed] ticket sales." *Id.* 14–15.

NoNaNi also claims that Live Nation—through its subsidiary Ticket Master—began interfering with NoNaNi's contracts and business relationships

with Polo G and G Herbo. At some point, "[e]ven though Ticket Master [had been] selling tickets for [NoNaNi's] Tampa event scheduled for November 27, 2021, . . . [Live Nation] began to promote a different concert event in Tampa with [Polo G] only a couple of weeks later in December of 2021." *Id.* at 6. Then, "[i]n October of 2021, [Live Nation] cancelled its Tampa event, [and] began promoting a completely different event with [G Herbo] in Atlanta, Georgia to occur on the very same date as [NoNaNi's] Festival." *Id.* NoNaNi believes that this caused significant confusion in the marketplace, resulting in a "sudden standstill of all ticket purchases for [the Festival]." *Id.* at 7.

NoNaNi maintains that, "[d]ue to the individual and collective actions of [Live Nation, Polo G, and G Herbo], NoNaNi was forced to cancel the [Festival] in order to mitigate further damages." *Id.* at 8. As a result, NoNaNi "was forced to forfeit the large deposits paid to [Polo G and G Herbo] . . . [as well as] money paid with respect to [media coverage] and promotional material through social media, radio commercial scripts, digital billboard designs, flyers, posters, etc." *Id.* NoNaNi lost the trust of past and future investors as well. *Id.*

On August 10, 2022, NoNaNi filed its Complaint against Live Nation, Polo G and G Herbo. *Id.* at 1. Therein, NoNaNi brings six claims for relief: Count I alleges tortious interference with Polo G's contract against Live Nation, Count II alleges tortious interference with G Herbo's contract against Live Nation, Count III

alleges breach of contract against Polo G, Count IV alleges breach of contract against G Herbo, Count V alleges unjust enrichment against Polo G, and Count VI alleges unjust enrichment against G Herbo. *Id.* at 9–18. NoNaNi requests "no less than $300,000 for all compensatory and punitive damages . . . [as well as] all costs and prejudgment interest, and . . . any further relief that the Court deems equitable and just[.]" *Id.* at 19.

On October 6, Live Nation filed its Motion to Dismiss. Dkt. 17 at 1. Live Nation moves to dismiss both of NoNaNi's tortious interference claims (Counts I & II) under Federal Rule of Civil Procedure 12(b)(6). *Id.* Alternatively, Live Nation moves to dismiss NoNaNi's entire complaint as a shotgun pleading. *Id.* at 15.

## LEGAL STANDARD

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

The Court begins by considering NoNaNi's tortious interference claims. "[T]ortious interference with a contract and tortious interference with a business relationship are basically the same cause of action." *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976).[1] "Under Florida law, the elements of tortious interference with a business relationship are (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional

---

[1] One material distinction is that, "in an action for tortious interference with a contract, a plaintiff must demonstrate there was a breach of contract." *Novell v. Bank of Am. Corp.*, No. 14-CV-80672-RLR, 2014 WL 7564678, at *4 (S.D. Fla. Dec. 3, 2014). NoNaNi has plead that both Polo G and G Herbo breached their contracts. *Id.* at 13–16. Accordingly, for the purposes of reviewing Live Nation's Motion to Dismiss, there is no material distinction.

and unjustified interference with the relationship; and (4) damage to the plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citations omitted). "The law in Florida is clear [t]hat there is no such thing as a cause of action for interference [with a contractual or advantageous business relationship] which is only negligently or consequentially effected." *Ingenuity, Inc. v. Linshell Innovations Ltd.*, No. 6:11-CV-93-ORL-28-KRS, 2014 WL 1230695, at *4 (M.D. Fla. Mar. 25, 2014), *aff'd*, 644 F. App'x 913 (11th Cir. 2016) (citations and internal quotations omitted) (alterations in original).

Live Nation first argues that NoNaNi has failed to properly allege that Live Nation had knowledge of NoNaNi contractual relationships with Polo G and G Herbo. Dkt. 17 at 6. The Court agrees. As an initial matter, "the business relationship[s]" that Live Nation must have had knowledge of under the second element of tortious interference are the contractual relationships that afforded NoNaNi existing or prospective legal rights. *See Int'l Sales & Serv., Inc.*, 262 F.3d at 1154. In other words, contrary to NoNaNi's suggestion, more is required than mere "knowledge of a business relationship" in some abstract sense. Dkt. 22 at 8. Live Nation must have had knowledge of NoNaNi's relationships with Polo G and G Herbo—the relationships that NoNaNi alleges Live Nation intentionally interfered with.

NoNaNi argues that, because the Complaint pled that Live Nation owns the Ticket Master website where tickets for NoNaNi's event were being sold, "[w]ithout more, it is plausible and reasonable to say that Live Nation knew or should have known that [NoNaNi] had a business relationship with Defendants Polo G and G Herbo." *Id.* at 22. This conclusion does not follow from its premise. NoNaNi omits any explanation concerning how tickets are listed, who lists tickets, or how Live Nation's alleged knowledge of a conflicting event on Ticket Master generally translates to knowledge of specific contractual relationships between NoNaNi and Polo G and G Herbo. Instead, NoNaNi alleges that knowledge of X equates to knowledge of Y. This is possible; but, without more, it is not plausible. "Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp.*, 550 U.S. at 555. All NoNaNi offers in relation to the second element of tortious interference is speculation.

The Court also finds that NoNaNi failed to properly allege the third element of tortious interference. It is well settled that, "[t]o be liable for tortious interference, the offending party's interference must be both direct and intentional." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, at *1340 (S.D. Fla. 2007) (citations and internal quotations omitted). This means that "[t]he plaintiff must plead and prove that the defendant manifested a specific intent to interfere with the business relationship." *Ingenuity, Inc.*, 2014 WL 1230695, at

\*4 (M.D. Fla. Mar. 25, 2014). Put differently, "[t]he existence of malice is key to the tort of tortious interference with a business relationship." *Id.*

As Live Nation notes, there are no allegations that Live Nation directly interfered with NoNaNi's contractual relationships with Polo G and G Herbo, or that Live Nation was motivated by malice. NoNaNi only alleges, in a rather conclusory manner, that Live Nation intentionally interfered with said relationships by knowingly selling tickets to separate events that included Polo G and G Herbo. This constitutes indirect interference at best. *See Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986) (finding that the interference was only indirect where a physician's client relationships were consequentially interfered with by a hospital's termination of the physician's privileges); *Ingenuity, Inc.*, 2014 WL 1230695, at \*4 (M.D. Fla. Mar. 25, 2014) (finding that "[o]ne does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person"). At worst, it is justified competition. *See Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1213 (S.D. Fla. 2021)

In sum, NoNaNi's Complaint fails to state actionable claims for tortious interference against Live Nation. The motion to dismissed standard demands more

than unadorned accusations and legal conclusions. Because Counts I and II amount to nothing more, they must be dismissed.

The Court now turns to consider Live Nation's averment that NoNaNi's complaint "is an incomprehensible shotgun pleading" worthy of dismissal. Dkt. at 17 at 15. Complaints that violate Federal Rules of Civil Procedure 8(a)(2) or 10(b) "are often disparagingly referred to as 'shotgun pleadings.'" *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has recognized four basic types of shotgun pleadings: (1) a complaint that contains multiple counts where each count adopts the allegations of all preceding counts; (2) a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; (3) a complaint that fails to separate into different counts each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions or which of the defendants the claim is brought against. *Id.* at 1321–23. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

The Court does not consider NoNaNi's entire Complaint to be so deficient as to warrant dismissal pursuant to Federal Rules of Civil Procedure 8(a)(2) or

10(b). While NoNaNi's Complaint is not a model of clarity, it gives Live Nation adequate notice of the claims against it and the grounds upon which each claim rests. This much is evinced by Live Nation's Motion to Dismiss. Further, while each of NoNaNi's Counts do incorporate paragraphs 1 through 65 (the common fact section of NoNaNi's Complaint), NoNaNi's Complaint clarifies which factual allegations specifically relate to each Count by restating the pertinent factual claims in a more concise manner throughout the Counts themselves. Dkt. 1 at 9–19. This is a common practice, and it does not cause undue confusion here.

## CONCLUSION

Although the Court only dismisses Counts I & II, the Court grants NoNaNi leave to amend its entire Complaint. NoNaNi would be well advised to study Live Nation's Motion to Dismiss and address the shortcomings that it focuses on.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant Live Nation's Motion to Dismiss with prejudice (Dkt. 17) is **DENIED**.

(2) Counts I & II of Plaintiff NoNaNi's Complaint (Dkt. 1) are dismissed without prejudice.

(3) Plaintiff NoNaNi may amend its Complaint by or before January 6, 2023.

**DONE AND ORDERED** at Tampa, Florida, on December 8, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**

**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record