## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NONANI ENTERTAINMENT, LLC,

     Plaintiff,

v.                                   Case No. 8:22-cv-1829-WFJ-JSS

LIVE NATION WORLDWIDE, INC.,
TREMANI BARTLETT P/K/A
"POLO G," AND HERBERT
RANDALL WRIGHT P/K/A
"G HERBO,"

     Defendants.

_____/

## ORDER

     Before the Court is Defendant Live Nation Worldwide, Inc.'s ("Live Nation") Motion to Dismiss with prejudice (Dkt. 27). Plaintiff NoNaNi Entertainment, LLC ("NoNaNi") has not responded, rendering Live Nation's Motion unopposed. M.D. Fla. R. 3.01(c). Upon careful consideration, the Court grants Live Nation's unopposed Motion and dismisses Counts I and II of NoNaNi's Amended Complaint (Dkt. 26) with prejudice.

## BACKGROUND

     On April 29, 2021, NoNaNi paid Defendants Tremani Bartlett ("Polo G") and Herbert Randall Wright ("G Herbo") to secure their performance at a Central Florida venue for the night of July 17, 2021. Dkt. 26 at 3–4. The event was canceled for

unknown reasons. *Id.* NoNaNi consequently entered into contracts with Polo G and G Herbo for a different performance at the Hoopz + Hip Hop Festival (the "Festival") on November 27, 2021, in Tampa, Florida. *Id.*

The contracts established a number of promotion obligations for Polo G and G Herbo. These included: "(a) providing a video drop within 48 hours of receiving [NoNaNi's] deposit, (b) posting on Facebook and Instagram [to promote] the event flyer within 48 hours of receipt of the flyer, (c) posting at least one story on Instagram and Facebook with the event flyer within 1 month of the show, [and] (d) posting the event flyer on Instagram and Facebook 7 days prior to the event[.]" *Id.* at 3–5. With the exception of the stories, these promotional posts were to remain on Polo G and G Herbo's social media through November 27, 2021. *Id.*

NoNaNi claims that both Polo G and G Herbo "failed to promote the Festival or [their] upcoming performance[s] as required by the contract[s]." *Id.* at 7. Instead, they allegedly promoted their own concerts and tours. *Id.* at 20, 24. And this "negatively affect[ed] ticket sales." *Id.* at 22, 24.

NoNaNi also maintains that Live Nation—through its subsidiary Ticket Master—began interfering with NoNaNi's contracts with Polo G and G Herbo. For instance, "[e]ven though Ticket Master began selling tickets for [NoNaNi's] Tampa event scheduled for November 27, 2021, . . . [Live Nation] began to promote a different concert event in Tampa with [Polo G] only a couple of weeks later in

December of 2021." *Id.* at 7. NoNaNi "attempted to communicate with Defendants repeatedly once the conflicting Tampa event was scheduled" but, "shortly after [Live Nation] finally cancelled the Tampa concert, it proceeded to schedule a different G Herbo concert in Atlanta, Georgia on the very same date as the Festival." *Id.* at 8. According to NoNaNi, this caused significant confusion in the marketplace, resulting in a "sudden standstill of all ticket purchases for [the Festival]." *Id.* at 9.

"[NoNaNi] was forced to cancel [the Festival] in order to mitigate any further damages." *Id.* This caused NoNaNi to "forfeit the large deposits paid to [Polo G and G Herbo,]" and "money paid with respect to all the media coverage and promotional material" it secured. *Id.* at 12. In addition, NoNaNi allegedly lost "substantial income [from the Festival,]" "the trust of investors, consumers, and the charity who promoted the concert," and future opportunities. *Id.* at 11–12.

On August 10, 2022, NoNaNi filed its original Complaint against Live Nation, Polo G, and G Herbo. *Id.* at 1. The Court denied Live Nation's Motion to dismiss NoNaNi's Complaint with prejudice. Dkt. 24; Dkt. 17. The Court nevertheless found that NoNaNi failed to state actionable claims for tortious interference and dismissed Counts I and II without prejudice, permitting NoNaNi to amend its Complaint. Dkt. 24 at 10.

On January 6, 2023, NoNaNi filed its Amended Complaint. Dkt. 26. NoNaNi brings six claims for relief: Count I—tortious interference with Polo G's contract

against Live Nation; Count II—tortious interference with G Herbo's contract against Live Nation; Count III—breach of contract against Polo G; Count IV—breach of contract against G Herbo; Count V—unjust enrichment against Polo G; and Count VI—unjust enrichment against G Herbo. *Id.* at 12–26. NoNaNi requests "no less than $300,000 for all compensatory and punitive damages . . . all costs and prejudgment interest, and . . . any further relief that the Court deems equitable and just[.]" *Id.* at 26.

Live Nation now moves to dismiss Counts I and II of NoNaNi's Amended Complaint with prejudice. Dkt. 27.

## LEGAL STANDARD

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* All facts are accepted as true and viewed in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

At the dismissal stage, a court may consider matters judicially noticed, such as public records, without converting a defendant's motion to one for summary judgment. *See Universal Express, Inc. v. S.E.C.*, 177 F. App'x 52, 52 (11th Cir. 2006). Additionally, documents may be considered at the dismissal stage if they are

4

central to, referenced in, or attached to the complaint. *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). Documents attached to a motion to dismiss may also be considered if the documents are (1) central to the plaintiff's claim, and (2) undisputed (if their authenticity is not challenged). *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

## DISCUSSION

"[T]ortious interference with a contract and tortious interference with a business relationship are basically the same cause of action." *Smith v. Ocean State Bank*, 335 So. 2d 641, 642 (Fla. 1st DCA 1976).[1] "[T]he elements of tortious interference with a business relationship are (1) the existence of a business relationship that affords the plaintiff existing or prospective legal rights; (2) the defendant's knowledge of the business relationship; (3) the defendant's intentional and unjustified interference with the relationship; and (4) damage to the plaintiff." *Int'l Sales & Serv., Inc. v. Austral Insulated Prod., Inc.*, 262 F.3d 1152, 1154 (11th Cir. 2001) (citations omitted). "The law in Florida is clear [t]hat there is no such thing as a cause of action for interference [with a contractual or advantageous business relationship] which is only negligently or consequentially effected."

---

[1] One material distinction is that, "in an action for tortious interference with a contract, a plaintiff must demonstrate there was a breach of contract." *Novell v. Bank of Am. Corp.*, No. 14-CV-80672-RLR, 2014 WL 7564678, at *4 (S.D. Fla. Dec. 3, 2014). NoNaNi has plead that both Polo G and G Herbo breached their contracts. *Id.* at 13–16. Accordingly, for the purposes of reviewing Live Nation's unopposed Motion to Dismiss NoNaNi's Amended Complaint, there is no material distinction.

*Ingenuity, Inc. v. Linshell Innovations Ltd.*, No. 6:11-CV-93-ORL-28-KRS, 2014 WL 1230695, at *4 (M.D. Fla. Mar. 25, 2014), *aff'd*, 644 F. App'x 913 (11th Cir. 2016) (citations and internal quotations omitted) (alterations in original).

Live Nation argues that NoNaNi's Amended Complaint fails to state a claim for tortious interference for three reasons: (a) NoNaNi fails to plausibly allege that Live Nation had knowledge of the subject business relationships or contracts; (b) NoNaNi fails to plausibly allege that the claimed interference was direct, intentional, unjustified, and solely motivated by malice; and (c) NoNaNi fails to plausibly allege that the claimed interference was not privileged. Dkt. 27 at 7–16. The Court will address each point in turn.

## I.    Live Nation's Knowledge

As the Court explained in its previous Order, the second element of tortious interference requires more than mere knowledge of a business relationship in some abstract sense—Live Nation must have had knowledge of NoNaNi's contractual relationships with Polo G and G Herbo. Dkt. 24 at 6. This element was inadequately pled in NoNaNi's original Complaint because NoNaNi essentially claimed that, as the owner of Ticket Master, Live Nation is necessarily aware of all of the relationships underlying Ticket Master event postings. *Id.* at 7. This is possible; but, without more, it is not plausible. *Id.*

6

NoNaNi's Amended Complaint has provided more through its addition of facts concerning Musicians Touring Alliance, LLC ("MTA"). According to NoNaNi, MTA acted as the agent for both Polo G and G Herbo in their contracts with NoNaNi. Dkt. 26 at 3, 4. NoNaNi further claims that MTA had direct communications with Live Nation regarding conflicting event dates after NoNaNi brought the conflicts to MTA's attention. *Id.* at 8. These "weeks" of intermediary communication naturally suggest that Live Nation learned of Polo G and G Herbo's contractual relationships with NoNaNi (if Live Nation had not already done so though its subsidiary Ticket Master). *Id.* at 14.

Given this, NoNaNi's Amended Complaint has adequately pled the second element of tortious interference. NoNaNi has alleged two means by which Live Nation could have become aware of NoNaNi's relationships with Polo G and G Herbo: Ticket Master review and MTA discussions. It is plausible that Live Nation in fact gained the requisite knowledge through these avenues. Nothing more than plausibility is required at the motion to dismiss stage. *See Ashcroft*, 556 U.S. at 678.

## II.    Live Nation's Interference

Under the third element of tortious interference, "the offending party's interference must be both direct and intentional." *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, at *1340 (S.D. Fla. 2007) (citations and internal quotations omitted). To satisfy the second prong of this element, "[t]he plaintiff must

plead and prove that the defendant manifested a specific intent to interfere with the business relationship." *Ingenuity, Inc.*, 2014 WL 1230695, at *4 (citations and internal quotations omitted). Put differently, "[t]he existence of malice is key to the tort of tortious interference with a business relationship." *Id.*

NoNaNi cannot establish the third element of tortious interference in relation to Live Nation's alleged interference with NoNaNi and Polo G's contractual relationship. Putting aside questions of intent (and the fact that Live Nation cancelled the December Polo G event which NoNaNi complains of), there is no such thing as tortious interference for scheduling an event three weeks after a competitor's event featuring the same performer.[2] *See Ingenuity, Inc.*, 2014 WL 1230695, at *4 (finding that "there is no such thing as a cause of action for interference [with a contractual or advantageous business relationship] which is only negligently or consequentially effected."). Such interference is indirect if it can be considered interference at all.

---

[2] There appears to be some ambiguity regarding particular months in NoNaNi's Amended Complaint. NoNaNi claims that, "[e]ven though Ticket Master began selling tickets for Plaintiff's Tampa event scheduled for November 27, 2021, shortly thereafter, Defendant Live Nation began to promote a different concert event in Tampa with Defendant Polo G only a couple of weeks later in December of 2021." Dkt. 26 at 7. However, after making multiple additional references to a "December of 2021 concert" and "a December 18, 2021, concert date[,]" NoNaNi goes on to claim that "an MTA representative told Plaintiff that it continuously for weeks pressured and succeeded in getting Defendant Live Nation to cancel its Tampa show in October of 2021 as a direct result of its conflict with the Festival date and overlapping Polo G performance." *Id.* at 7–8. The word "October" is absent from all of the preceding factual allegations but is repeated in both Counts I and II. *Id.* at 14, 18. The Court assumes that either (1) this is a typographic error and that NoNaNi repeated it by copy and pasting the erroneous language from its fact section into both Counts I and II or (2) that Live Nation canceled its December concert during the month of October. NoNaNi's factual allegations make no sense otherwise.

*See Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. 5th DCA 1986) (finding that the interference was only indirect where a physician's client relationships were consequentially interfered with by a hospital's termination of the physician's privileges). Indeed, Live Nation's scheduling in no way diminished Polo G's ability to perform under his contract with NoNaNi. NoNaNi cannot claim otherwise merely because its ticket sales were consequentially disrupted. There simply is no direct interference pled in Count I.

Count II fails for the same reason. As stated above, "[t]o be liable for tortious interference, the offending party's interference must be both *direct* and intentional." *Romika-USA*, 514 F. Supp. 2d at *1340 (citations and internal quotations omitted) (emphasis added). NoNaNi appears to suggest that there was direct interference with G Herbo's contract because "Live Nation knew that it would be impossible for [G Herbo] to perform in two distant cities at the same time" when Live Nation "schedule[d] a different G Herbo Concert in Atlanta, Georgia on the very same date as the Festival." Dkt. 26 at 19. But "[o]ne does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the other cannot perform both it and his contract with the third person." *Ingenuity, Inc.*, 2014 WL 1230695, at *4 (internal quotations and citations omitted). NoNaNi must allege that Live Nation's acts had more than just the consequence of interfering with NoNaNi and G Herbo's contract; NoNaNai must

9

allege that Live Nation directly interfered with it. *See Merrill Lynch Bus. Fin. Servs.,*
*Inc. v. Performance Mach. Sys. U.S.A., Inc.*, No. 04-60861-CIV-MARTINEZ, 2005
WL 975773, at *7 (S.D. Fla. Mar. 4, 2005). After two attempts, NoNaNi has failed
to plead the "kind of direct action required under Florida law" to sustain a tortious
interference claim. *Romika-USA*, 514 F. Supp. 2d at *1341. The indirect interference
NoNaNi complains of is insufficient.

It is also worth noting that "[e]mbedded within the essential elements of the
tort of intentional interference with a business relationship is the legal requirement
that the plaintiff prove causation." *Ingenuity, Inc.*, 2014 WL 1230695, at *4 (internal
quotations and citations omitted). NoNaNi canceled the Festival by its own
initiative. Dkt. 26 at 11. It is therefore unclear how NoNaNi causally links Live
Nation's alleged interference to any breach by Polo G or G Herbo—NoNaNi's
unilateral decision to cancel the Festival is what made their event performances
impossible. Moreover, the existence of overlapping future commitments did not
preclude Polo G and G Herbo from promoting the Festival on their social media.

## III.   Live Nation's Privilege to Interfere

Even if NoNaNi could adequately plead direct interference and causation, it
must address Live Nation's qualified privilege to interfere as a competitor. "This
privilege . . . embodies the fundamental principle that a competitor can go after
business for itself: there can be no claim for tortious interference with a business

relationship where the action complained of is undertaken to safeguard or promote one's financial or economic interest." *Shenzhen Kinwong Elec. Co. v. Kukreja*, 574 F. Supp. 3d 1191, 1213 (S.D. Fla. 2021) (internal quotations and citations omitted). There are only two means of overcoming this privilege: (1) by showing "that the defendant's motive was *purely* malicious" and (2) by showing that "improper means were used." *Id.*

NoNaNi cannot show that Live Nation's motive was purely malicious. By NoNaNi's own admission, "Live Nation's actions were taken to further suppress its competition." Dkt. 26 at 11. In other words, NoNaNi and Live Nation are competitors and the actions NoNaNi basis its tortious interference claims on were undertaken by Live Nation to safeguard or promote Live Nation's financial or economic interests. This obvious conclusion cannot be negated by the concomitant evidence of malice NoNaNi points to. *See McCurdy v. Collis*, 508 So. 2d 380, 383 (Fla. 1ˢᵗ DCA 1987) (citations omitted) (finding that "[a] qualified privilege to interfere is not negated by concomitant evidence of malice. It is only when malice is the *sole* basis for interference that it will be actionable"). "[I]t's simply implausible to believe . . . that [Live Nation's] *sole* motive was to maliciously harm [NoNaNi]" irrespective of any financial gain. *See Shenzhen Kinwong Elec. Co.*, 574 F. Supp. 3d at 1214 (citation omitted) (finding it implausible to believe that malice was the

plaintiffs' sole motive for disparaging the defendants because "[p]laintiffs had a competitive economic interest in doing business with the [d]efendants' customers").

NoNaNi has also failed to adequately plead the use of improper methods. Improper methods include physical violence, misrepresentations, illegal conduct, threats of illegal conduct, or other forms of improper conduct. *See Duty Free Americas, Inc. v. Estee Lauder Companies, Inc.*, 797 F.3d 1248, 1280 at n.9 (11th Cir. 2015) (citing *Standard Jury Instructions–Civil Cases (99–1),* 778 So.2d 264, 269 (Fla. 2000)). NoNaNi has not directly pled any of the above. The closest NoNaNi comes to doing so is stating that "[a]ccording to recent news reports, [Live Nation] is currently being investigated by the Department of Justice (DOJ) for antitrust violations." Dkt. 26 at 11. The Court is unsure what to make of this claim. It nevertheless strikes the Court as rather implausible to suggest that—based on the facts here—Live Nation has restrained trade to the level of an antitrust violation in order to interfere with NoNaNi's relationships with Polo G and G Herbo. Competition does not become improper merely because a competitor enjoys "more worldwide recognition" than the company it is competing with. *Id.* at 10.

## CONCLUSION

NoNaNi has twice failed to plausibly plead direct and unjustified interference by Live Nation. The Court is confident that no further amendment by NoNaNi will result in viable tortious interference claims. The Motion is uncontested and granted.

Accordingly, it is hereby **ORDERED** and **ADJUDGED**: Defendant Live

Nation's uncontested Motion to Dismiss Counts I and II with prejudice (Dkt. 27) is

**GRANTED**.

**DONE AND ORDERED** at Tampa, Florida, on February 13, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record